UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DANIEL YOUNG, et al., | CASE NO. C18-1007JLR |
| Plaintiffs, | ORDER ADOPTING IN PART AS MODIFIED AND REJECTING IN PART REPORT AND RECOMMENDATION |
| v. | |
| PATRICK PENA, et al., | |
| Defendants. | |

**I. INTRODUCTION**

This matter comes before the court on the Amended Report and Recommendation of United States Magistrate Judge Michelle L. Peterson (R&R (Dkt. # 79) ("Report and Recommendation") and Defendants Travis Hauri and Sergeant David Johnson's (collectively, "Defendants")[1] objections thereto (Obj. (Dkt. # 80)). Plaintiff Katherine

//

---

[1] Mr. Hauri and Mr. Johnson are Bellingham Police Department officers and the only two remaining defendants in this case.

Wren Katzenjammer[2] filed a response to Defendants' objections. (*See* Resp. (Dkt. # 82).) Having carefully reviewed all of the foregoing, along with all other relevant documents, and the governing law, the court ADOPTS in part as modified and REJECTS in part the Report and Recommendation.

## II. BACKGROUND

The remaining claims in this case relate to the actions of Bellingham Police Officer Travis Hauri and his superior, Sgt. David Johnson, at the hospital on the evening of June 2, 2016. On that date, Ms. Katzenjammer was involved in an incident with Bellingham Police Officers and others at her father's apartment on Maplewood Avenue. (*See* Sturlaugson Decl. (Dkt. # 12) ¶¶ 3-5; Peña Decl. (Dkt. # 13) ¶¶ 3-5.) She was tased twice by officers after she failed to comply with their directives. (*See* Sturlaugson Decl. ¶¶ 9-11; Peña Decl. ¶¶ 8-11.) Although Ms. Katzenjammer's father, Richard Young, was arrested for assaulting an officer and booked into the Whatcom County Jail, Ms. Katzenjammer was never arrested or booked into jail. (*See* Sturlaugson Decl. at ¶ 17; Peña Decl. ¶ 19.)

Ms. Katzenjammer was sedated by medics and transported to the hospital for treatment. (*See* 1st Hauri Decl. (Dkt. # 17) ¶ 11.) After their investigative duties on Maplewood Avenue were completed, Sgt. Johnson and Officer Hauri went to the emergency department at St. Joseph Hospital to speak with Ms. Katzenjammer about the

---

[2] As explained in the Report and Recommendation, since the time of the events at issue, Daniel Young became known as Katherine Wren Katzenjammer. The Court refers to Ms. Katzenjammer by her chosen name unless otherwise necessary to accurately quote statements from the record.

incident. (*See* 1st Johnson Decl. (Dkt. # 18) ¶ 11.) Officer Hauri asserts that his purpose in going to the hospital was to "possibly discuss the incident if [Ms. Katzenjammer] was willing and to document via photograph any physical injuries he suffered from the incident." (*See 2d* Hauri Decl. (Dkt. # 65) ¶ 7.) Sgt. Johnson similarly asserts that his purpose in going to the hospital was to complete the use of force investigation, which would have included speaking with Ms. Katzenjammer about the incident and documenting via photography any physical injuries she suffered from the incident. (*See* 2d Johnson Decl. (Dkt. # 62) ¶ 7.)

Hospital staff allowed Defendants to see Ms. Katzenjammer, who was unconscious, and to photograph her injuries. (2d Decl. ¶ 12; 2d Decl. ¶ 12.) Photographic evidence in the record shows that Ms. Katzenjammer's hospital gown was manipulated to reveal her bare torso, shoulder, and thigh. Both officers assert that they do not recall moving or manipulating the hospital gown that Ms. Katzenjammer was wearing. (2d Johnson Decl. ¶ 16; 2d Hauri Decl. ¶ 16.) Both officers assert that if Ms. Katzenjammer's gown "was moved or manipulated in some way, that would have been done by or with the supervision of the hospital staff on scene." (2d Johnson Decl. ¶ 16; 2d Hauri Decl. ¶ 16.) After taking the photographs, Sgt. Johnson and Officer Hauri left the hospital. (*Id.* ¶ 18.)

Ms. Katzenjammer's remaining claims in this case are for unlawful search under the Fourth Amendment, and a claim for Intentional Infliction of Emotional Distress ("IIED"), also referred to as the tort of Outrage. Defendants moved for summary judgment, arguing that they are entitled to qualified immunity, and entitled to summary

judgment on the merits of Ms. Katzenjammer's Fourth Amendment and IIED claims. (*See* MSJ (Dkt. # 61) at 6, 21-25.)

Magistrate Judge Peterson recommended denying Defendants' summary judgment motion in full. (*See* R&R at 27.) Magistrate Judge Peterson concluded that Defendants are not entitled to summary judgment on qualified immunity grounds or on the merits of Plaintiffs' Fourth Amendment claim, because when viewing the facts in the light most favorable to Plaintiffs, Defendants' unauthorized search of Ms. Katzenjammer's body violated her Fourth Amendment right to be free from such an invasive search, and that right was clearly established. (*See* R&R at 18-19; 25.) Magistrate Judge Peterson also recommended denying summary judgment on Plaintiffs' IIED claim because, viewing the facts in the light most favorable to Plaintiffs, Defendants "should have been aware of a high probability that such conduct would cause severe emotional distress." (*See* R&R at 26-27.)

Defendants submitted objections to the court. (*See* Obj.) Defendants contend that the Report and Recommendation errs in denying summary judgment on qualified immunity, the merits of the Fourth Amendment claim, and the merits of the IIED claim. (*See generally id.*) Ms. Katzenjammer filed a response to the objections that largely mirrors the conclusions in the Report and Recommendation. (*See generally* Resp.)

### III. STANDARD OF REVIEW

A district court has jurisdiction to review a Magistrate Judge's report and recommendation on dispositive matters. Fed. R. Civ. P. 72(b). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly

objected to." *Id.* "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The court reviews de novo those portions of the report and recommendation to which specific written objection is made. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

## IV. DISCUSSION

**A.     Qualified Immunity and the Fourth Amendment**

The court has thoroughly examined the record before it and finds Magistrate Judge Peterson's reasoning in light of that record with respect to qualified immunity and the merits of the Fourth Amendment claim persuasive. The court is mindful that in the qualified immunity context, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *See Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003). The court clarifies that the right at stake here is the right to be free from an officer manipulating—or directing another to manipulate—a person's clothes absent a warrant, consent, or recognized exception. To the extent the Report and Recommendation could be read to suggest the right at stake is more general, the court modifies the Report and Recommendation to clarify the specific right at issue. In any case, the court finds that the Report and Recommendation's reasoning and conclusions are correct with respect to qualified immunity and the merits of the Fourth Amendment claim.

Defendants object that there was no clearly established right because "there is not a case in this country that establishes that what these officers did in these specific

circumstances – viewing and photographing a man's torso and part of his leg and chest to document injuries – violates the Fourth Amendment." (*See* Obj. at 2.) Defendants assert that the Report and Recommendation "dismissed and ignored the Defendants' citations to cases that held that a criminal suspect has no right to privacy in an emergency department hospital room." (*See id.* at 7.) Defendants are incorrect that the Report and Recommendation "dismissed and ignored" these cases; in fact, the Report and Recommendation analyzed them and concluded that nearly every case Defendants rely on is inapposite because those cases analyze searches of individuals under arrest whose reasonable expectation of privacy is lessened. (*See* R&R at 15-16 (concluding that the cases on which Defendants rely "involve subjects who had a diminished right to bodily privacy because they were either under arrest or there was reasonable suspicion to search them for contraband, unlike Plaintiff in this case").) The court agrees with the reasoning of the Report and Recommendation on that issue.

Defendants also cite to cases holding that hospital patients have a diminished expectation of privacy. (*See, e.g.*, Obj. at 7 (citing *United States v. George*, 987 F.2d 1428, 1432 (9th Cir. 1993); *United States v. John*, No. CR-12-08082-001-PCT, 2014 WL 2863661 (D. Ariz. June 24, 2014)).) Defendants are correct that hospital patients may have an expectation of privacy in a hospital emergency room that is less than in their home or car, depending on the circumstances of their visit and whether they share the room with other patients. *See, e.g.*, *George*, 987 F.2d at 1432 (concluding that, to the extent an officer's entrance into the plaintiff's hospital room could be considered a search, the plaintiff did not have a reasonable expectation of privacy in the hospital room;

but basing this holding in part on the fact that the plaintiff was "admitted under police supervision following his arrest"); *United States v. Howard*, No. 1:10-CR-121-ODE, 2011 WL 1459375, at *9-10 (N.D. Ga. Apr. 15, 2011) ("Courts in numerous jurisdictions have held that a defendant does not have a reasonable expectation of privacy in an emergency, operation, or . . . trauma room that the defendant shares with other patients and in which medical staff administers critical treatment."). However, even if Defendants were lawfully present in Ms. Katzenjammer's hospital room,[3] reliance on this authority ignores the crucial difference that Defendants' actions here were not limited to simply their presence in the emergency room and viewing and photographing Ms. Katzenjammer in plain view.

Here, in contrast, Ms. Katzenjammer alleges that Defendants lifted up and otherwise manipulated her hospital gown while she was unconscious, and the photographs in the record show that Ms. Katzenjammer's gown was manipulated differently between different photographs. (*See* Katzenjammer Decl. (Dkt. # 36) ¶ 106; Second Hauri Decl. ¶ 12, Ex. A (photographs).) These allegations distinguish this case from the cases Defendants rely on, in which there were no allegations that officers manipulated a person's clothes. The officers deny the allegation and testify that if Ms. Katzenjammer's gown "was moved or manipulated in some way, that would have been done by or with the supervision of the hospital staff on scene." (2d Johnson Decl. ¶ 16;

//

---

[3] The parties submitted scant evidence regarding whether Ms. Katzenjammer shared her hospital room with other patients, or whether there were other indicators of a reasonable expectation of privacy, such as a closed door or curtain.

2d Hauri Decl. ¶ 16.)  Accordingly, there is a genuine dispute of fact regarding whether the officers manipulated, or directed hospital staff to manipulate, Ms. Katzenjammer's hospital gown, or rather whether hospital staff manipulated the gown without officer involvement.  This dispute of fact precludes summary judgment in favor of Defendants on qualified immunity grounds.  *See Bonivert v. Clarkson*, 883 F.3d 865, 871-72 (9th Cir. 2017) (Where a "genuine issue of material fact exists that prevents a determination of qualified immunity at summary judgment, the case must proceed to trial.").

For the same reasons, Defendants' objection that the right at stake is not clearly established must fail.  A police officer is "not entitled to seize and search every person whom he sees on the street or of whom he makes inquiries.  Before he places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so."  *Sibron v. New York*, 392 U.S. 40, 64 (1968); *see also Ybarra v. Illinois*, 444 U.S. 85, 100 (1979) (holding that the fact that the police had probable cause to believe that a bartender sold drugs at a tavern did not justify the patting down of the bar's patrons, in the absence of reasonable suspicion that they were armed and presently dangerous); *United States v. Hill*, 545 F.2d 1191, 1193 (9th Cir. 1976) (noting that *Terry* "precludes general exploratory searches," and allowing a limited, self-protective search for weapons upon reasonable suspicion where it was "wholly confined to the area of the bulge in question and was a direct and specific inquiry"); *United States v. Askew*, 529 F.3d 1119, 1127 (D.C. Cir. 2008) ("Because the opening of a fastened coat, like the opening of most other clothing, renders visible whatever lies underneath, such an action involves an even greater intrusion in precisely the same

socially recognized expectation of privacy."). Even where an officer has reasonable suspicion that a suspect is concealing a weapon and may harm the officer, the officer must use the "least intrusive means" necessary to protect the officer's safety and is generally required to conduct a pat down before lifting the suspect's clothes. *See United States v. Aquino*, 674 F.3d 918, 925-26 (8th Cir. 2012). "Searching under articles of clothing, whether it be a man's pant leg or a woman's blouse, is necessarily more intrusive than a pat down. Such a search is thus not the 'least intrusive means' necessary to protect an officer's safety, and exceeds the permissible limits of a *Terry* investigatory detention." *See id.* (citing *United States v. Correa*, 641 F.3d 961, 967 (8th Cir. 2011)).

The court finds the comparison to *Terry* searches particularly instructive. Officers violate the Fourth Amendment even when they have reasonable suspicion that a person is armed and dangerous unless they limit the search to the "least intrusive means," which generally means either a pat-down or a specific, targeted search of a suspicious bulge. *See, e.g.*, *Hill*, 545 F.2d at 1193. This rule is clearly established and applies on public streets, where citizens have no reasonable expectation of privacy with respect to the location. Given this clearly established rule, it necessarily follows that it is clearly established that officers violate the Fourth Amendment if they lift clothing to conduct a search in the *absence* of reasonable suspicion, consent, a warrant, or a recognized exception, even when the officers are where they have a right to be. As the Report and Recommendation aptly sets forth, Defendants' stated purpose of discussing an incident and documenting injuries is not a recognized exception and is not grounds to conduct a generalized search underneath a person's clothing. (*See* R&R at 14, 18.)

Defendants further object by contending the search was reasonable because the officers did not view Ms. Katzenjammer's genitalia. (*See* Obj. at 4-6.) Whether an officer viewed a person's genitalia while conducting a search is a relevant inquiry in circumstances in which the officer has a right to manipulate a person's clothing in the first place. However, that right exists only with a warrant based on probable cause or a recognized exception, such as a search incident to arrest. *See Schneckloth v. Custamonte*, 412 U.S. 218, 219 (1973) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1973)) (noting that a search conducted without a warrant issued upon probable cause is "per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions."). Here, no such right exists. Defendants had no warrant, Ms. Katzenjammer was not under arrest, she did not consent, and no other exception applies. The court finds persuasive and adopts the reasoning of the Report and Recommendation with respect to this objection. (*See* R&R at 15-17.)

In response to the Report and Recommendation's justified admonition of Defendants for relying on cases in which suspects were under arrest, Defendants argue that they relied on the closest authority, and that the fact that cases with overlapping facts do not exist should weigh in favor of the conclusion that the right at stake is not clearly established. (*See* Obj. at 2-4.) The court disagrees, and adopts the Report and Recommendation's reasoning on this issue. (*See* R&R at 11 ("'This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in light of pre-existing law the unlawfulness must be apparent.'") (quoting *Anderson v. Creighton*, 483 U.S. 635, 640

(1987) (internal citations omitted).) There does not need to be a case directly on point, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *see also Hope v. Pelzer*, 536 U.S. 730, 739-41 (2002) ("Officials can still be on notice that their conduct violates established law even in novel factual circumstances."). The court is unaware of a case that specifically evaluates officers manipulating the clothing and viewing underneath the clothing of an unconscious person without a warrant and for the sole purpose of documenting an injury. However, as stated above, existing Fourth Amendment precedent with regard to the manipulation of clothing places the constitutional question beyond debate.

Accordingly, the court adopts as modified here the Report and Recommendation's reasoning and conclusions with respect to qualified immunity and the merits of Ms. Katzenjammer's Fourth Amendment claim, and DENIES Defendants' motion for summary judgment on those issues.

**B.    Intentional Infliction of Emotional Distress**

Although the court finds persuasive much of the Report and Recommendation's reasoning regarding Plaintiffs' IIED claim, the court concludes that Plaintiffs have provided insufficient evidence for a reasonable juror to conclude that Ms. Katzenjammer suffered severe emotional distress. Therefore, the court rejects in part the Report and Recommendation on the severe emotional distress element and grants summary judgment in favor of Defendants on Plaintiffs' IIED claim.

//

Severe emotional distress is a necessary element of a claim of outrage. *See Kloepfel v. Bokor*, 66 P.3d 630, 635 (Wash. 2003). "It is for the court to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed." *Id.* (quoting Restatement (Second) of Torts § 46 (Am. Law Inst. 1965)). Severe emotional distress is "'not transient and trivial' but distress such that 'no reasonable man could be expected to endure it.'" *Id.* at 636 (quoting Restatement (Second) of Torts § 46 cmt. j) (citing *Grimsby v. Samson*, 530 P.2d 291, 295 (Wash. 1975)). In opposing a motion for summary judgment, it is the plaintiff's burden to come forward with evidence that any emotional distress was more than transient or trivial. *See Kloepfel*, 66 P.3d at 633.

Washington courts have granted summary judgment based on a lack of evidence of severe emotional distress where a plaintiff submitted testimony that the plaintiff "was scared when [the Defendant] yelled at her and that she felt angry, sad, and mad," and was "traumatized and very upset following the incident" in question, because "the fact that [the plaintiff] may have been upset or had negative feelings because of the incident is not enough to create a question of fact as to whether she suffered *severe* emotional distress." *Sutton v. Tacoma Sch. Dist. No. 10*, 324 P.3d 763, 769-70 (Wash. Ct. App. 2014). The court held that the plaintiff's failure to submit evidence "regarding the intensity of those feelings or their duration" was fatal to the plaintiff's claim and affirmed summary judgment for the defendant on that basis. *See id.* at 770. The court noted that in cases involving facts that rise to the level of severe beatings and death threats, Washington courts have inferred emotional distress as a result of the defendant's alleged conduct. *See*

*id.* (citing *Kloepfel*, 66 P.3d at 631-32; *Carmody v. Trianon Co.*, 109 P.2d 560 (Wash. Ct. App. 1941); *Brower v. Ackerley*, 943 P.2d 1141 (Wash. Ct. App. 1997)). However, the court distinguished the facts in *Sutton* from cases involving more extreme threats. *See id.* at 771 (holding that the inference of severe emotional distress is only allowed where there is evidence of "long-term outrageous conduct and only when the plaintiff has provided some evidence of significant emotional distress").

Accordingly, to survive summary judgment, Ms. Katzenjammer bears the burden to present evidence of severe emotional distress. The court concludes that Ms. Katzenjammer has not done so. The evidence of emotional distress in the record is insufficient for a reasonable juror to conclude that Ms. Katzenjammer suffered severe emotional distress as defined by Washington courts. As far as the court can tell, the only evidence of emotional distress consists of the fact that Ms. Katzenjammer became upset during her deposition and needed to request a break during questioning about the content of the photographs at issue. (*See* R&R at 27 (citing Brady Decl. ¶ 3, Ex. A (Dkt. # 62) ("Katzenjammer Dep.") at 36:25-39:8).) This evidence is insufficient to withstand summary judgment. Therefore, although the court agrees with much of the reasoning of Magistrate Judge Peterson with respect to Ms. Katzenjammer's IIED claim, the court rejects the conclusion that Defendants are not entitled to summary judgment, and grants summary judgment in favor of Defendants on Plaintiffs' IIED claim.

//

//

//

# V. CONCLUSION

For the reasons set forth above, the court:

(1) ADOPTS the Amended Report and Recommendation (Dkt. # 79) as modified with respect to qualified immunity and Ms. Katzenjammer's Fourth Amendment claim;

(2) REJECTS the Amended Report and Recommendation's conclusion with respect to Plaintiffs' claim for Intentional Infliction of Emotional Distress (Outrage);

(3) GRANTS in part and DENIES in part Defendants' motion for summary judgment (Dkt. # 61) as set forth above; and

(4) Directs the Clerk to send copies of this Order to the parties and to Magistrate Judge Peterson.

Dated this 19th day of December, 2019.

JAMES L. ROBART
United States District Judge